**Harold Stanley FAULKNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0557–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 26, 1987.

Catherine Greene Burnett, Morrow & Burnett, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Eleanor M. McCarthy, Russell Hardin, Harris County Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

DUGGAN, Justice.

A jury convicted appellant of attempted capital murder and assessed his punishment at 20 years confinement. Appellant asserts eight points of error on appeal.

The evidence showed that, while in a school parking lot at night drinking beer and smoking marijuana, appellant, the complainant, and Adrian Silva began fighting. During the fight, the complainant was shot four times, and his wallet was stolen. Appellant and Silva fled the scene and were shortly thereafter apprehended. At trial, appellant contended that the complainant was the aggressor and that he acted in self defense. Appellant does not challenge the sufficiency of the evidence.

Appellant's first point of error contends that the trial court erred in failing to suppress his oral and videotaped confessions, because they were the product of an illegal arrest.

Officer Gutierrez of the Harris County Sheriff's Department testified that, as he was responding to a disturbance call at the Kitty Hawk Apartments, he heard four gunshots coming from the north, behind the apartments, and that he believed the gunshots were from someone shooting at cans. As Gutierrez was leaving the apartments to proceed to a school located just north of the apartments, he observed a brown pickup truck make a "pretty quick" u-turn in the roadway. He testified that he followed the truck and intended to stop it to determine whether it was involved in the shooting.

After following the truck for several blocks at speeds of up to 65 m.p.h., Gutierrez turned on his overhead lights and "popped" his siren once, in order to get the driver's attention. The vehicle turned into a convenience store parking lot, and appellant and Silva exited the vehicle. By this time, Gutierrez was aware via radio broadcast that another officer had found someone shot four times at the school. Gutierrez told Silva to get back in the truck, and directed appellant to approach the sheriff's vehicle.

While appellant was standing by the car, Gutierrez heard a further radio broadcast describe the perpetrators of the shooting as "a white male and a Mexican male in a brown pickup truck." Because appellant, Silva, and the truck fit the description, Gutierrez drew his weapon and placed both men under arrest.

When another sheriff's patrol unit arrived, appellant and Silva were handcuffed and taken to the school, where they were identified by the complainant before his removal to the hospital. Appellant gave an oral confession at the school and later gave a videotaped confession.

Appellant contends that his initial stop was illegal because Deputy Gutierrez had formed an intent to stop the vehicle before he observed it speeding, and because the speeding justification was a mere pretext. Appellant concedes that once Gutierrez heard the radio broadcast, there was sufficient probable cause to arrest him. *Ferguson v. State*, 573 S.W.2d 516, 522 (Tex.Crim. App.1978). The premise of appellant's argument is that Gutierrez initially did not have sufficient articulable facts[1] to justify stopping the vehicle. We disagree.

■ Gutierrez heard four gunshots coming from the school at around 3:00 a.m. Moments later, he observed appellant's truck make an unusually quick u-turn near where he had heard the shots, and he did not see anyone else in the area. We conclude that these facts were sufficient, standing alone, to constitute "specific, articulable facts, which in light of [Officer Gutierrez's] experience and general knowledge, together with reasonable inferences from those facts, would reasonably warrant the intrusion on [appellant's] freedom" for the limited purpose of ascertaining his involvement in what could have been any number of possible offenses (i.e., disorderly conduct, trespassing, illegal discharge of a firearm, illegal possession of a weapon, or any number of assaultive offenses). *Armstrong v. State*, 550 S.W.2d 25, 30–31 (Tex. Crim.App.1976); *Lopez v. State*, 663 S.W.2d 587, 589 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd); *James v. State*, 629

S.W.2d 92, 93 (Tex.App.—Dallas 1981, pet. ref'd), *cert. denied*, 459 U.S. 987, 103 S.Ct. 340, 74 L.Ed.2d 382 (1982).

■ Gutierrez also observed appellant speeding before he made any attempt to stop the vehicle. This was a sufficient basis to lawfully stop the truck. *Borner v. State*, 521 S.W.2d 852, 854 (Tex.Crim.App. 1975); *Moore v. State*, 629 S.W.2d 266, 268 (Tex.App.—Dallas 1982, no pet.). Even if the underlying facts did not amount to reasonable suspicion, a traffic stop, based in part on the valid observation of a traffic offense, is not unconstitutional merely because the officer had additional suspicions that, by themselves, might not justify the stop. *Dodson v. State*, 646 S.W.2d 177, 184 (Tex.Crim.App.1980); *Hampton v. State*, 511 S.W.2d 1, 4 (Tex.Crim.App.1974). We hold that Gutierrez lawfully stopped appellant's truck. Appellant's first point of error is overruled.

Appellant's second point of error contends that the trial court erred in not suppressing his oral confession, because appellant did not voluntarily waive his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Officer Koch testified at appellant's Jackson-Denno hearing that, after the complainant identified appellant, he, Koch, placed appellant in the back of his patrol car and read him his *Miranda* warnings. After each warning, appellant indicated that he understood. Koch testified that he discussed the case with appellant, that appellant told him that both he and the complainant had guns, and that he had shot the complainant in self-defense. Koch asked appellant if he would show him where he had thrown the gun, and appellant said he would. At trial, Koch testified that he said to appellant, "[T]here are a lot of school kids that travel through here. I said you all threw the dope out and if you threw the gun out, we need to get it before a school kid comes by and picks it up and shoots himself or a friend."

---

1. Appellant's actual argument is phrased in terms of probable cause.

Appellant directed officers to the location where the marihuana and the gun were found. Koch testified that he never threatened or forced appellant to take him to the locations.

At the hearing, however, appellant testified that officers had threatened to beat him if he did not tell them what they wanted to know.

Appellant contends that his oral confession was inadmissible because: (1) his statements were the result of improper persuasion; and (2) the record does not reflect that he waived his *Miranda* rights.

As the trier of facts, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and is free to accept or reject the testimony of any witness, including that of the accused. *Hawkins v. State,* 660 S.W.2d 65, 72 (Tex.Crim.App.1983). An appellate court is not at liberty to disturb any finding of fact supported by the evidence. *Dunn v. State,* 721 S.W.2d 325 (Tex.Crim. App.1986).

■ The trial court chose to disbelieve appellant's testimony, and found that no use or threats of violence were made by the officers. We hold that the trial court's findings of fact, filed in compliance with Tex.Code Crim.P.Ann. art. 38.22 (Vernon 1979), are supported by the record. The only relevant question is whether the trial court properly applied the law to the facts. *Burdine v. State,* 719 S.W.2d 309 (Tex. Crim.App.1986).

We hold that the trial court did not abuse its discretion by overruling that portion of appellant's motion to suppress that claimed that the oral confession was involuntary because of threats of physical force.

■ Next, the lack of an express waiver by appellant of his *Miranda* rights does not, in and of itself, render the oral confession inadmissible. *Harville v. State,* 591 S.W.2d 864, 866 (Tex.Crim.App.1979). Rather, waiver is to be judged based on the totality of the circumstances. *Id.; Williams v. State,* 566 S.W.2d 919 (Tex. Crim.App.1978).

The record reflects that appellant offered basically the same explanation to Koch that he offered at trial, i.e., that the killing was in self-defense. He testified that he tried to tell the officers the series of events that he characterized as "the truth," but that the officers grabbed his mouth, told him to shut up, and said that, if he didn't tell the truth, they would beat him. We find it significant that appellant continued to relate an exculpatory version of the events to Koch.

Moreover, appellant's testimony is facially inconsistent with his contention that he waived his *Miranda* rights only because of physical threats. Either he waived his *Miranda* rights in order to explain the actions that he took in self-defense, or he spoke because of threats; he could not do both. The trial court could have considered this inconsistency in concluding that appellant voluntarily and knowingly waived his rights. *See Snow v. State,* 721 S.W.2d 943 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

■ We hold that the trial court did not abuse its discretion in finding, based on the totality of the circumstances, that appellant waived his *Miranda* rights. *Hawkins,* 660 S.W.2d at 72.

Officer Koch's oral expression of concern to appellant about the children finding the gun in the school yard does not change our opinion. In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the U.S. Supreme Court held that an oral confession obtained by interrogation nearly identical to the instant case was inadmissible. However, *Innis* had asserted his right to counsel, and the issue was whether such tactics constituted interrogation. In the instant cause, the issue is whether appellant waived his *Miranda* rights. Because we hold that he did, *Innis* does not prohibit this type of interrogation. Appellant's second point of error is overruled.

Appellant's third point of error contends that the trial court erred in admitting his videotaped confession because the questioning of appellant shows that he did not understand the *Miranda* warnings.

The transcript of the videotape reflects that Koch read each warning from the blue card. After each warning, Koch asked appellant if he understood, and appellant replied that he did. The following then occurred:

"OFFICER: Okay, Mr. Faulkner, do you knowingly, intelligently and voluntarily waive these rights as I have read them out to you on this Miranda warnings? DEFENDANT: I don't understand that. Could you translate that down for me? OFFICER: Okay. Do you knowingly, intelligently and voluntarily, do you know what I read you? Do you understand it? Are you intelligent enough to understand what I've read you, and do you voluntarily waive these rights that I've read you? Are you willing to talk to me? DEFENDANT: Yes, sir. OFFICER: Okay. All right, again, I'm going to tell you that everything is being recorded...."

■ Appellant contends that his first quoted response to Koch indicates that he did not understand each of his *Miranda* rights. We disagree. Appellant's response indicates that he did not understand Koch's question regarding *waiver* of the rights, not that he did not understand his rights. After Koch did what appellant requested, i.e., "translated it down for him," appellant answered that he was willing to talk to Koch. The record supports the trial court's conclusion that appellant waived his rights. *Hawkins,* 660 S.W.2d at 72. Appellant's third point of error is overruled.

In a novel argument, appellant's fourth point of error contends that the videotaped confession should have been suppressed because Koch failed to advise him that he did not have to consent to a videotaped confession in contrast to a written one.

Appellant acknowledges that there is presently no statutory requirement for such an admonition, but claims that public policy compels that such a "warning" be judicially grafted onto the oral confession laws of the State.

Appellant did not object to the confession on this basis at trial, and therefore nothing is presented for review. *Paster v. State,* 701 S.W.2d 843, 846 (Tex.Crim.App.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986).

■ Even if the point had been preserved, however, we would decline to embark on a course of judicial legislation where the legislature has already provided significant procedural safeguards to insure the accuracy and integrity of the videotaped statement. Appellant concedes that all of the requirements of Tex.Code Crim.P. Ann. art. 38.22 (Vernon 1986) were complied with by the officers. Appellant's fourth point of error is overruled.

Appellant's fifth point of error asserts that the trial court erred in allowing the prosecutor to impeach him by use of his prior inconsistent oral statements, made to Deputy Gutierrez shortly after the arrest, because such use was in direct violation of the court's pre-trial ruling that the statements were inadmissible.

At the time of his arrest, appellant told Gutierrez that "he didn't know what was going on" and "I don't know nothing." At trial, appellant testified that he tried, several times, to tell the officers the series of events that he characterized as "the truth," but that the officers grabbed his mouth, told him to shut up, and told him that if he didn't tell the truth they would beat him. The prosecutor then asked appellant, "You told Deputy Gutierrez you didn't know anything about the shooting at first, didn't you?"

Appellant concedes that there was no objection, but contends that none was necessary, because an instruction to disregard would not have cured the error. *Romo v. State,* 631 S.W.2d 504 (Tex.Crim.App.1982); *D.L.N. v. State,* 590 S.W.2d 820 (Tex.Civ. App.—Dallas 1979, no writ). We do not reach the question of whether an instruction to disregard would cure error of this type, because we hold that the prosecutor's questioning was proper.

■ When an accused testifies at trial, prior inconsistent statements, even if obtained in violation of *Miranda,* may be

used to impeach him. *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). Only when the statement is involuntary may it not be used for impeachment. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *see* Tex.Code Crim.P.Ann. art. 38.-22, sec. 5 (Vernon 1979).

■ The statement used to impeach appellant was not even the product of custodial interrogation. To the contrary, it was a spontaneous declaration by appellant made after he had heard the radio dispatch identifying him as the perpetrator of the shooting. Appellant's fifth point of error is overruled.

Appellant's sixth point of error contends that the trial court erred in overruling his motion to quash the indictment. He contends that he should have been prosecuted for the specific offense of aggravated robbery rather than for the more general offense of attempted capital murder.

Appellant's motion to quash objected to the indictment because it "constitutes two or more phases of the same offense that carry different punishments. *See: Martinez v. State*, 498 S.W.2d 938, 943 (Tex. Crim.App.1973)." Appellant's trial objection was that the offenses in the indictment are misjoined. Because these are not the complaints raised on appeal, and because appellant did not object on the grounds now raised on appeal, nothing is presented for review. *Hogue v. State*, 711 S.W.2d 9 (Tex.Crim.App.1986).

■ We note, however, that each of the cases cited by appellant involved a situation where conviction under the general statute resulted in felony punishment, while the pertinent special, or specific, statute would have resulted in misdemeanor punishment. *See Ex parte Pribble*, 548 S.W.2d 54 (Tex. Crim.App.1977); *Jones v. State*, 552 S.W.2d 836 (Tex.Crim.App.1977); *Boyette v. State*, 632 S.W.2d 915, 919 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd). Here, attempted capital murder and aggravated robbery are both first degree ·felonies carrying the same range of punishment. Error, if any, is harmless. *Mills v. State*,

722 S.W.2d 411 (Tex.Crim.App.1986). Appellant's sixth point of error is overruled.

Appellant's seventh point of error contends that the prosecutor committed reversible error by commenting on appellant's failure to testify at the punishment phase of the trial. Such comment occurred, he urges, when the prosecutor argued that appellant had not admitted his guilt or shown remorse.

Appellant acknowledges that no trial objection was made to the argument in question and concedes that the general rule is that failure to object waives appellate review of any alleged error. However, he contends, objection was unnecessary because the prosecutor's argument could not have been cured by an instruction to disregard, and the failure to object was thus irrelevant and unnecessary to preserve error for appellate review. *Romo v. State*, 631 S.W.2d 504 (Tex.Crim.App.1982).

The Fifth Amendment to the United States Constitution, article I, section 10 of the Texas Constitution, and Tex.Code Crim. P.Ann. art. 38.08 (Vernon 1979), all prohibit comment on the accused's failure to testify.

The pertinent rule has been stated:

The test employed is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify ... In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character.

*Jones v. State*, 693 S.W.2d 406, 407 (Tex. Crim.App.1985) (quoting *Bird v. State*, 527 S.W.2d 891, 894 (Tex.Crim.App.1975)).

■ For an argument to constitute a prohibited comment, the implication must be clear that the language used directly referred to the accused's failure to testify. It is not sufficient that the language used might be construed as an implied allusion thereto. *Jones*, 693 S.W.2d at 407; *Ramos v. State*, 419 S.W.2d 359, 367 (Tex.Crim. App.1967).

The three portions of the prosecutor's punishment phase argument that appellant

complains about are set out and emphasized below, preceded by the argument that established their context.

If you ever saw the movie Network, there is a phrase in there where he finally just flips up this key and yells out and says you know, I am sick and tired.

I can't take it anymore and I am sick and tired of this three hours non stop crying and I am sick and tired of him saying whatever we can fool the people with, whatever lies we can tell about the victim and the police is fair game, folks. It's just to protect our hide. He has a right to say nothing and you're not to consider it. But, once he got on that stand, I submit to you, he had a legal and moral obligation to tell the truth, whatever that might be, and he chose not to do that and he chose to prey on your sympathy and he chose to prey on the police about the police and the fact people are willing to think police do wrong things, and they do sometimes, as we all do. He chose to do that and he chose to throw the ball in that court and I suggest to you unforgivably because when he shot that young man four times and left him for dead, he didn't need to come in here and shoot him again by time and time again lying about it and he didn't need to shoot again by lying on the stand and contending he had a gun and calling him a liar and saying he was trying to hurt him. It's not right, folks.

You know, I don't know any eloquent way to say it. It's just not right, and when you go to decide what the punishment is for somebody, you consider really three things in our system. You consider rehabilitation. God help us if juries ever quit considering rehabilitation. It's a proper consideration. You consider deterence of the Criminals and others, and you consider punishment. Those three things we talk about being the proper considerations for punishment. But, I suggest to you when you do that, you also look at not only the crime and the way it is committed, but you look at the defendant and his reaction to it when he did it and after it was over, because that tells you something, not only about how

horrible the crime is, but it tells you something about the defendant, doesn't it? *If a person regrets what they did and comes forth and says I did it, I'm sorry, God, I wish it never happened, please have mercy on my soul, ladies and gentlemen of the jury, we can identify with that. That is a person that's taken the first step towards rehabilitation.*

Not only do we consider that, but it might even result in a probation for a shooting. I am not going to say as he says because someone was shot there is no probation. That is always a decision for people like yourselves to make speaking for the community as to what you think is proper, but I am saying this: *it's inconceivable to me that we talk about probation for a person who not only shoots somebody in the back four times but doesn't want to admit it. He wants to hide behind his family and police abuse and crying on and on ...*

... if you look at his attitude and you look at the way he is at nineteen, I suggest to you we are only going to go downhill in the community *because he is still insisting he is now and he did throughout the trial,* that we are to blame. He is to blame and other people are to blame and *the person that won't admit his wrong and won't accept his punishment,* the punishment that won't rehabilitate, no matter what sentence you give.

■ We construe all three objected-to passages to be reasonable references to appellant's testimony while on the stand at the guilt-innocence phase of trial. The argument is prosecutorial summation of the evidence, characterizing appellant's overall defense posture and self-defense theory as being self-pitying and untruthful. The argument describes appellant's approach as one that casts blame for the incident and appellant's plight upon the severely wounded complainant and, afterwards, upon the police, whom he alleged to have mistreated him. In contrast with the timely objected-to argument in *Owen v. State,* 656 S.W.2d 458 (Tex.Crim.App.1983), which brought re-

versal ("He had the opportunity to come up here and say to you that he was sorry."), we find the prosecutor's reference to be closer to the situation in *Jones* where the prosecutor's argument ("The defendant hasn't indicated any remorse.") was held, in context, not to be reversible. In *Owen*, defense counsel promptly and accurately objected to each of three repeated instances of clear comment on the defendant's failure to testify. In our case, appellant's counsel made no objection, and the prosecutor's argument, including his discussion of rehabilitation, can readily be understood to refer to appellant's explanation of the offense at the guilt phase, and to suggest to the jury that the appellant is unlikely to be rehabilitated if his reaction to the crime is that which is indicated by his testimony. Appellant's seventh point of error is overruled.

Appellant's eighth point of error contends that he was denied due process of law because of the cumulative error that resulted from improper cross-examination by the State. Appellant categorizes the instances as: (1) fourteen side-bar remarks; (2) two instances of cross-examination outside the record; (3) the reference to appellant's oral declaration discussed in point of error four; and (4) a question regarding whether appellant's co-defendant would testify and verify appellant's story. Appellant concedes that none of these, standing alone, warrant reversal of his conviction.

In sixteen of the eighteen instances, appellant did not object. The two times that appellant did object, the objection was sustained, and appellant did not request a curative instruction or a mistrial. Failure to object and request a curative instruction waives the error. *Cisneros v. State*, 692 S.W.2d 78 (Tex.Crim.App.1985); *Duran v. State*, 505 S.W.2d 863 (Tex.Crim.App.1974). Although the prosecutor's remarks may have been objectionable, each one could have been cured by an instruction to disregard. Similarly, although repeated misconduct by a prosecutor may form the basis for a cumulative denial of appellant's right to a fair trial, such is rarely the case when appellant has failed to request any relief from the trial court. *Compare Houston v. Estelle*, 569 F.2d 372 (5th Cir. 1978).

We hold that any improper questioning by the prosecutor did not deny appellant a fair trial. Appellant's eighth point of error is overruled.

The judgment is affirmed.