Affirmed and Opinion filed March 20, 2008








Affirmed and Opinion filed March 20, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01153-CR

____________

 

KEITH ROBERT TURNER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 1066525

 



 

O P I N I O N








A jury found appellant, Keith Robert Turner, guilty of
aggravated sexual assault and assessed punishment at ninety years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  See
Tex. Penal Code Ann. ' 22.021 (Vernon 2003).  In four issues,
appellant argues (1) the trial court erred in denying his motion to suppress
because appellant=s videotaped statements were the product
of an unlawful arrest, (2) the trial court erred in denying his motion to
suppress because appellant did not waive his Miranda[1]
rights before making the videotaped statements, (3) the trial court erred in
admitting the expert testimony of a police officer regarding blood spatter, and
(4) the trial court erred in admitting evidence which was not properly
identified.  We affirm.

Factual and Procedural Background 

In April 2006, David Ritcheson, the complainant, and Gus
Sons attended the crawfish festival in Spring, Texas.  Before leaving for the
festival, both boys drank vodka, took Xanax and smoked marijuana.  Gus and
Ritcheson met up with David Tuck and appellant while at the festival.  Later
that evening, Gus=s mother drove all four boys back to the
Sons=s house, and left
them alone with Danielle Sons, Gus=s little sister,
and Danielle=s friend, Desiree.  The four boys continued to drink,
smoke marijuana, and use drugs throughout the night. 

At some point during the evening, Danielle told Gus that
Ritcheson tried to kiss her.  Tuck, overhearing this allegation, became very
angry with Ritcheson and punched him in the face.  Ritcheson fell down and
appeared to be knocked out.  Tuck and appellant then proceeded to drag
Ritcheson outside and severely beat him for approximately fifteen minutes. 
Appellant hit and kicked Ritcheson while Tuck stomped on him with his
steel-toed boots.  While beating Ritcheson, Tuck referred to Ritcheson as a Abeaner@ and shouted
things such as Awhite power@ and AAryan nation.@








After beating Ritcheson, Tuck and appellant stripped him
naked, and then Tuck cut Ritcheson=s chest with a
knife and burned Ritcheson=s stomach and chest with his cigarette. 
Next, Tuck kicked Ritcheson onto his stomach while appellant retrieved a
plastic umbrella pole from the outdoor patio furniture.  Appellant placed the
pole in Ritcheson=s rectum and held it in place.  Appellant
looked at Tuck and nodded toward Ritcheson.  Tuck then kicked the end of the
pole into Ritcheson=s rectum.  Finally, the two boys dragged
Ritcheson to the back fence and poured bleach over his body. 

Approximately one to two hours after the assault, Tuck and
appellant left the Sons=s house.  Gus and Danielle, who both
witnessed the assault, fell asleep that night, but when Gus woke up the next
morning, Ritcheson was still lying in the backyard.  Gus told his mother, and
she called 9-1-1.  Emergency personnel arrived and immediately transported
Ritcheson to the hospital.  

Michael Wienel, the lead detective, interviewed Tuck at the
scene and subsequently arrested him.[2] 
Wienel determined appellant was too intoxicated to interview at that time, so
he left appellant at the scene.  Two days later, Officers Rocha and Phillips
took appellant to the police station to ask some questions.  Appellant gave two
videotaped statements, and in his second statement, appellant admitted some
involvement in the offense.  Wienel arrested appellant as a result of the
second statement.  

Appellant filed a motion to suppress his videotaped
statements, which the trial court denied after holding a pretrial hearing.  A
jury subsequently found appellant guilty of aggravated sexual assault and
assessed punishment at ninety years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  See
Tex. Penal Code Ann. ' 22.021.  This appeal followed. 

Discussion

A.      Were
Appellant=s Statements the Product of an
Unlawful Arrest?








In his first issue, appellant argues his federal
constitutional rights, his state constitutional rights, and his statutory
rights under the Texas Code of Criminal Procedure were violated when the trial
court failed to suppress his videotaped statements because his statements were
the product of an unlawful arrest.[3] 
According to appellant, the unlawful arrest caused his statements to be
involuntary, and therefore, the trial court should have excluded them. 
Ultimately, appellant=s contention hinges on whether appellant
was in custody at the time his statements were made.    

1.       Standard
of Review

A bifurcated standard of review is applied to a trial court=s ruling on a
motion to suppress evidence.  See Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).  An appellate court affords almost total deference to a
trial court=s determination of historical facts supported by the
record, especially when the trial court=s findings are
based on an evaluation of credibility and demeanor.  Id.  The appellate
court affords the same amount of deference to a trial court=s ruling on mixed
questions of law and fact if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Id.  The court reviews de novo
those questions not turning on credibility and demeanor.  Id.  At a
suppression hearing, the trial court is the exclusive trier of fact and judge
of the credibility of the witnesses.  Mason v. State, 116 S.W.3d 248,
256 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  If the trial
judge=s decision is
correct under any theory of law applicable to the case, the decision will be
sustained.  State v. Ross, 32 S.W.3d 853, 855B56 (Tex. Crim.
App. 2000).

2.       Applicable
Law








Appellant argues he was in custody when his videotaped
statements were made.  A person is in Acustody@ if, under the
circumstances, a reasonable person would believe his freedom of movement was
restrained to the degree associated with a formal arrest.  Dowthitt v. State,
931 S.W.2d 244, 254 (Tex. Crim. App. 1996).  The Areasonable person@ standard
presupposes an innocent person.  Id.  Moreover, the subjective intent of
law enforcement officials to arrest is irrelevant unless that intent is somehow
communicated or otherwise manifested to the suspect.  Id.  The Court of
Criminal Appeals has recognized four factors relevant to determining custody:

(1) Probable cause to
arrest,

(2) Subjective intent
of the police,

(3) Focus of the investigation,
and

(4) Subjective belief of the defendant.  

Id.  However, under Stansbury
v. California, 511 U.S. 318, 321B24, 114 S. Ct.
1526, 1528B30, 128 L. Ed. 2d 293 (1994), factors two and four
have become irrelevant except to the extent that they may be manifested in the
words or actions of law enforcement officials.  Dowthitt, 931 S.W.2d at
254. The custody determination must be made on an ad hoc basis, after
considering all of the objective circumstances. Id. at 255. 
Stationhouse questioning does not, in and of itself, constitute custody. Id. 
Further, custody does not occur merely because the suspect submits to and fails
a polygraph test.  Id.  However, the mere fact that an interrogation
begins as noncustodial does not prevent custody from arising later; a
consensual inquiry can escalate into custodial interrogation. Id.








The Court of Criminal Appeals has outlined at least four
general situations which may constitute custody:  (1) when the suspect is
physically deprived of his freedom of action in any significant way, (2) when a
law enforcement officer tells the suspect that he cannot leave, (3) when law
enforcement officers create a situation that would lead a reasonable person to
believe his freedom of movement has been significantly restricted, and (4) when
there is probable cause to arrest and law enforcement officers do not tell the
suspect that he is free to leave.  Id.  Concerning the first three
situations, Stansbury indicates the restriction upon freedom of movement
must amount to the degree associated with an arrest as opposed to an
investigative detention.  Id.  Concerning the fourth situation, Stansbury
dictates that the officer=s knowledge of probable cause be
manifested to the suspect.  Id.  Such manifestation can occur if
information substantiating probable cause is related by the suspect to the
officers.  Id.  Furthermore, situation four does not automatically
establish custody;  rather, custody is established if the manifestation of
probable cause, combined with other circumstances, would lead a reasonable
person to believe that he is under restraint to the degree associated with an
arrest. Id.  Based on these rules, we now review the testimony relevant
to this issue.

3.       Relevant
Testimony

In reviewing a trial court=s ruling, we
generally consider only evidence adduced at the suppression hearing because the
ruling was based on it rather than evidence introduced later.  Rachal v.
State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).  This general rule,
however, is inapplicable when the parties consensually relitigate the
suppression issue during the trial on the merits.  Id.  When the State
raises the issue at trial either without objection or with subsequent
participation in the inquiry by the defense, the defendant has made an election
to reopen the evidence, and consideration of the relevant trial testimony is
appropriate in our review.  Id.  In the instant case, both the
prosecutor and appellant=s attorney asked Rocha and Wienel
questions during the trial on the merits regarding the circumstances
surrounding the day appellant made his statements.  Additionally, appellant
renewed his objection made during the pretrial hearing, which the trial court
overruled.  Subsequently, appellant requested a running objection.  We conclude
appellant fully participated in the relitigation of the issue during trial;
therefore, we will consider the evidence adduced at both the suppression
hearing and the trial on the merits.  See id.








Two days after the offense occurred, Rocha and Phillips
participated in the follow-up investigation.  The officers did not have
probable cause at the time to believe appellant had committed the assault, but
they knew he was present the night of the incident and wanted to question him. 
When Rocha and Phillips arrived at appellant=s house, appellant
was sitting on his front porch.  

Rocha testified they got out of the car, identified
themselves to a man in the front yard, and asked if appellant was home.  After
the man pointed appellant out, the officers walked in appellant=s direction, and
appellant met them halfway in the yard.  Rocha testified he asked appellant A[d]o you know why
I am here@ and then told him AI=m here to ask you
some questions on an incident that happened at a party Saturday night, Sunday
morning.@  According to
Rocha, appellant said A[y]eah, I know why you=re here.@ Rocha testified
he asked appellant if he would Abe willing to come downtown to 601
Lockwood to answer some questions@ because he knew
appellant was at the party.  According to Rocha, appellant replied A[y]eah, I don=t have any
problems.@  

Rocha testified he asked appellant to follow him to the
car.  Before Rocha put appellant in the vehicle, he placed appellant in
handcuffs.  Rocha testified he told appellant before putting him in the vehicle
A[l]ook, I=m going to put you
in the backseat.  I=m going to handcuff you prior to putting
you in there. . . . Mainly for officer=s safety.@  According to
Rocha, he told appellant he was not under arrest, and he made it clear to
appellant the handcuffs were for officer safety.  Rocha explained he typically
handcuffed people he put in the backseat for safety purposes because his car
does not have a cage between the front and back seats.








Rocha also testified after he put appellant into his
vehicle, appellant=s sister approached him and asked if
appellant was under arrest.  Rocha told her more than once appellant was not
under arrest, but they were taking him down to the police station to ask him
some questions.  According to Rocha, he told her she could go to the station as
well, but she did not go.  Rocha testified he was not there to arrest appellant
and appellant was never placed under arrest.  Rocha also testified if appellant
had changed his mind on the way to the station and asked to go home, Rocha Awould probably
have taken him back to the house.@  Additionally,
Rocha testified if appellant had decided he did not want to talk until he had
an attorney, he would have given appellant his business card and taken down
appellant=s contact information.  On cross-examination, Rocha
did admit he wanted to take appellant to the police station for questioning
instead of questioning him at his house.  He also admitted the ride from appellant=s house to the
police station was approximately thirty miles, and appellant was handcuffed
until they reached the station.  During the trial on the merits, Rocha
testified he removed appellant=s handcuffs as soon as appellant got out
of the police car. 

Rocha was present during the first videotaped statement
made by appellant.  According to Rocha, Wienel read appellant his rights,
appellant seemed to understand his rights, and appellant voluntarily answered
Wienel=s questions. 
Rocha testified appellant did not appear intoxicated or impaired when he gave
his statements.

Phillips, the other officer who went to appellant=s house, testified
Rocha explained to appellant why he was there and asked appellant if he would
go to the station.  Phillips testified appellant voluntarily agreed to
accompany the officers to the station, and he testified  appellant was not
under arrest.  Phillips admitted appellant was handcuffed while riding in the
car, but he explained they used the handcuffs for the safety of the officers
and for the safety of appellant because the car did not have a cage.  Phillips
also testified Rocha explained to appellant why he was putting him in
handcuffs.  On cross-examination, Phillips testified it was a matter of
procedure to handcuff any person they transported, but he was unable to explain
how this procedure was for appellant=s safety.








Appellant testified to a slightly different version of the
events.  According to appellant, he was sitting on his front porch when two
officers pulled up in front of his house.  Appellant testified the two officers
briefly spoke with another young man in the front yard and then headed in
appellant=s direction.  Realizing they were looking for him,
appellant met the two officers in the yard and identified himself.  Appellant
testified the officers explained they wanted to ask appellant some questions
and needed him to accompany them to their car.  According to appellant, he
asked the officers if he could change his clothes before leaving with them, and
the officers would not allow him to do so.  However, Rocha testified during the
trial on the merits he did not remember appellant asking if he could change his
clothes before going to the station.

Appellant testified he walked with the officers to their
car, and then the officers placed appellant in handcuffs.  Appellant testified
he felt as if he had no choice about accompanying the officers to the station,
and he felt as if he had no choice about being handcuffed.  Appellant also
testified the officers never told him he was free to leave.  According to
appellant, even if he had asked, he did not believe the officers would have
released him.  On cross-examination, however, appellant admitted the officers
told him he was not under arrest and explained they were handcuffing him for
safety purposes.

Appellant testified once they arrived at the police
station, the officers removed his handcuffs and took him to a room.  Appellant
testified that Wienel read him his legal warnings at the station, and he
admitted one of those warnings said appellant could terminate the interview at
any time.  Despite being read the warnings, appellant testified he agreed to
answer questions in two different interviews.

Wienel also testified regarding the circumstances after
appellant arrived at the police station.  According to Wienel, the entire
interaction between him and appellant was videotaped.  Wienel testified he read
appellant his Miranda rights and asked appellant if he understood his
rights.  However, Wienel admitted he did not specifically ask appellant if he
waived his rights.  On cross-examination, Wienel explained he never received an
express waiver of rights from appellant, but after reading the admonishments,
appellant proceeded to give a statement.








According to
Wienel, the beginning of appellant=s interview was
not very fruitful because appellant claimed he did not remember what happened
at the party.  In an effort to elicit a response, Wienel made both true and
false statements to appellant, and eventually, appellant made some
incriminating statements.  Wienel testified he did not consider appellant to be
under arrest, and if appellant had not made the incriminating statements, he
would have been free to leave.  Wienel also testified he considered appellant=s statements to be
voluntary.                 4.       Analysis

On appeal, appellant argues a reasonable person would not
have believed he was free to leave.  Appellant specifically points to the fact
he was handcuffed and transported approximately thirty miles and that the
officers denied his request to change his clothes before leaving.  Appellant
places heavy reliance on the United States Supreme Court case Kaupp v. Texas,
538 U.S. 626, 123 S. Ct. 1843, 155 L. Ed. 2d 814 (2003), and argues the
facts in Kaupp are Aremarkably similar to the instant case.@  In response, the
State argues appellant voluntarily accompanied the officers to the station and
his subsequent handcuffing did not transform the accompaniment into an arrest. 
Furthermore, the State argues Kaupp is distinguishable from this case. 
We agree with the State. 

First, when a person voluntarily accompanies police
officers, who are then only in the process of investigating a crime, to a
certain location, and he knows or should know that the police officers suspect
he may have committed or may be implicated in committing the crime, we are
unable to hold that under the circumstances such person is in custody.  Dancy
v. State, 728 S.W.2d 772, 778B79 (Tex. Crim.
App. 1987).  Once the circumstances show the person is acting upon the
invitation, urging or request of police officers, and not the result of force,
coercion or threat, the act is voluntary and the person is not then in
custody.  Livingston v. State, 739 S.W.2d 311, 327 (Tex. Crim. App.
1987).








Here, there was evidence appellant freely left with the
officers.  According to Rocha, the officers approached appellant and asked A[d]o you know why
I=m here?  I am here
to ask you some questions on an incident that happened at a party
Saturday night, Sunday morning.@  Rocha testified  appellant stated A[y]eah, I know why
you=re here.@ Rocha also
testified he asked appellant if he would Abe willing to come
downtown to 601 Lockwood to answer some questions@ and appellant
responded A[y]eah, I don=t have any
problems.@  Phillips testified Rocha explained to appellant why
he was there and asked appellant if he would go to the station.  According to
Phillips, appellant voluntarily agreed to accompany the officers.  Appellant=s testimony was
that the officers Asaid they were going to ask [him]
questions and told [him] they needed [him] to come out to the car with them. 
So [he] walked out to their car and then they handcuffed [him].@  While appellant=s version is
different, the trial court was in the best position to evaluate the credibility
of the witness and was free to disbelieve appellant=s testimony.  See
Mason, 116 S.W.3d at 256.  Accordingly, we find there was sufficient
evidence to determine appellant voluntarily accompanied the officers to the
police station.








Next, the placing of handcuffs on a defendant does not, in
and of itself, automatically mean he is in custody.  See Balentine v. State,
71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (holding appellant was not under
arrest when officer placed him in handcuffs because while officer was
conducting an investigation into shots being fired, officer learned the suspect
had lied in response to previous questions and there was no bulletproof
partition between the front and back seat); Rhodes v. State, 945
S.W.2d 115, 117B18 (Tex. Crim. App. 1997) (holding
appellant was not under arrest because officer handcuffed suspect while his
partner was chasing second suspect in a high crime area at night).  In the
instant case, Rocha testified he told appellant before putting him in the
vehicle he was going to handcuff appellant but it was for officer safety and
not because appellant was under arrest.  Rocha explained he typically
handcuffed people he put in the backseat for safety purposes because the car
does not have a cage between the front and back seat.  Phillips testified Rocha
explained to appellant the reason for the handcuffs was for the safety of the
officers.  In addition, appellant admitted the officers told him he was not
under arrest and explained they were handcuffing him for safety purposes.  Once
appellant arrived at the police station, the officers removed his handcuffs. 
Considering the totality of the circumstances in this case, we conclude
handcuffing appellant based on customary safety concerns, and only for the
duration of transport in a car lacking a safety cage, does not show custodial
status.

Appellant also argues the officer=s refusal to allow
him to change his clothes before leaving for the station is indicative of an
arrest.  According to appellant, he asked the officers if he could change his
clothes before leaving with them, and the officers would not allow him to do
so.  Rocha, however, testified during the trial on the merits he did not
remember appellant asking if he could change his clothes before going to the
station.  Again, the trial court was in the best position to evaluate the
credibility of the witnesses and was free to disbelieve appellant=s testimony.  See
Mason, 116 S.W.3d at 256.  Accordingly, we do not find that this fact
weighs in favor of an arrest.








Finally, we disagree with appellant that Kaupp v. Texas
is Aremarkably
similar.@  In Kaupp,
the co-defendant implicated Kaupp in the murder of a fourteen-year-old girl.  See Kaupp, 538 U.S. at 627B28, 123 S. Ct. at 1844B45.  The detectives on the case
immediately tried to obtain a warrant to question Kaupp but failed;
nevertheless, they decided to Aget [Kaupp] in and confront him with what
[his brother] had said.@  Id. at 628, 123 S. Ct. at 1845. 
At approximately 3:00 a.m., five officers arrived at Kaupp=s house and
knocked on his front door.  Id.  Kaupp=s father allowed
the officers to enter the house.  Id.  Thereafter, Officer Pinkins, accompanied
by at least two other officers, went to Kaupp=s bedroom,
awakened him with a flashlight, identified himself, and said Awe need to go and
talk.@  Id. 
Kaupp=s only response
was Aokay.@  Id. 
Pinkins handcuffed Kaupp in his room and escorted him to the police car without
shoes and dressed only in his boxer shorts and a t-shirt.  Id.  The
officers never told Kaupp he was not under arrest and never told him he was
free to leave.  See id.  On the way to the police station, the officers
stopped for five to ten minutes at the location where the victim=s body was found,
and then they took Kaupp to the sheriff=s headquarters.  Id. 
The officers took Kaupp to an interrogation room, removed his handcuffs, and
advised him of his rights under Miranda.  Id.  Kaupp eventually
admitted involvement in the murder.  Id. at 629, 123 S. Ct. at 1845.

Kaupp unsuccessfully moved to suppress his statements,
arguing he was illegally arrested prior to giving the statements, and he was
ultimately sentenced to fifty-five years= imprisonment.  Id.
This court affirmed Kaupp=s conviction, concluding no arrest had
occurred until after the confession.  Id.  This court held Kaupp
consented to go with the officers by answering Aokay@ and saw no
contrary significance to the subsequent handcuffing given that it was a routine
safety procedure.  Id.  

The United States Supreme Court granted review of the case
and reversed this court=s decision regarding whether Kaupp was
under arrest at the time of his confession.  Id. at 632B633, 123 S. Ct. at
1847B48.  The Court
cited to a test derived from Justice Stewart=s opinion in United
States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed.
2d 497 (1980), which gave examples of circumstances that might indicate a
seizure.  Id. at 629B30, 123 S. Ct. at 1846.  The circumstances
include A>the threatening
presence of several officers, the display of a weapon by an officer, some
physical touching of the person of the citizen, or the use of language or tone
of voice indicating that compliance with the officer=s request might be
compelled.=@ Id. at 630, 123 S. Ct. at 1846
(citing Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877).  The Court
found there was evidence of every one of the probative circumstances mentioned
by Justice Stewart in Mendenhall.  Id. at 630B31, 123 S. Ct. at
1846.








The Court went on to say under the circumstances, Kaupp=s response of Aokay@ was not a showing
of consent, and Pinkins did not offer Kaupp a choice.  Id. at 631, 123
S. Ct. at 1847.  The Court stated A[t]here [was] no
reason to think Kaupp=s answer was anything more than >a mere submission
to a claim of lawful authority.=@ Id.
(citing Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75
L. Ed. 2d 229 (1983) (plurality opinion)).  Furthermore, the Court stated the
routine practice of transporting individuals in handcuffs was not as
significant as the state court thought.  Id. at 632, 123 S. Ct. at
1847.  The Court stated A[t]he test is an objective one, . . . and
stressing the officers= motivation of self-protection does not
speak to how their actions would reasonably be understood.@  Id.

The critical distinction between Kaupp and the case
sub judice is the consensual and nonthreatening nature of the events beginning
with appellant=s stroll from the porch to greet the officers.  Other
distinguishing facts include: (1) the officers arrived at appellant=s home at 11:00 in
the morning; (2) the officers explained to appellant they had some questions
that needed to be answered and asked if he would accompany them to the police
station; (3) appellant stated he knew why the officers were there and stated he
did not have a problem going with them; (4) after consenting to go with the
officers, appellant and the officers walked to the police car at which point
Rocha placed handcuffs on appellant and explained to him the handcuffs were
only for safety purposes; (5) Rocha informed appellant multiple times he was
not under arrest; (6) Rocha told appellant=s sister he was
not under arrest and told her she could go to the police station with him if
she wanted; and (7) the officers removed appellant=s handcuffs when
they arrived at the police station before taking him to a room.  

Here, evidence exists as to only one of the probative
circumstances mentioned by Justice Stewart in Mendenhall, whereas in Kaupp,
the Court found evidence of every one of the probative circumstances.  Id.
at 630B31, 123 S. Ct. at
1846; see Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877. 
Additionally, as discussed above, the evidence shows appellant voluntarily
consented to accompany the officers to the police station.  The statements made
by Rocha and appellant=s responses to those statements are
starkly different from the statement and response made in Kaupp.  Here,
the evidence proves appellant=s responses were consensual and not a mere
submission to a claim of lawful authority.  








In the instant case, appellant was handcuffed but, unlike Kaupp,
he was not handcuffed until after he consented to go with the officers.  Also,
unlike Kaupp, the officers informed appellant repeatedly he was not
under arrest and  informed him the handcuffs were merely for safety purposes. 
While the Supreme Court stressed in Kaupp the test is objective and an
officer=s motivation of
self-protection does not speak to how his actions would reasonably be
understood, we conclude the fact appellant consented before being handcuffed
and the fact the officers informed appellant he was not under arrest and was
being placed in handcuffs only for safety purposes to be important distinctions
between Kaupp and the case at hand.  We conclude a reasonable person
would understand the actions of the officers after being told multiple times
the purpose of the handcuffs was not to place him under arrest but for safety
purposes.  

Based on all of the evidence, we hold the trial court did
not abuse its discretion in concluding appellant was not in custody when he
gave his videotaped statements.  Accordingly, appellant=s statements were
not the product of an illegal arrest.  We overrule appellant=s first issue.    


B.      Did
Appellant Waive his Miranda Rights?

In his second issue, appellant argues his federal and state
constitutional rights[4]
and his statutory rights were violated when the trial court denied his motion
to suppress the videotaped statements because appellant did not expressly waive
his Miranda rights.  Appellant argues he did not knowingly,
intelligently and voluntarily waive his rights on the videotape.  The State
argues because appellant was never in custody, the interrogation was not a Acustodial
interrogation,@ therefore, the officers were not required to read
appellant his rights.  We agree with the State.     








1.       Applicable
Law

          Article
38.22 of the Texas Code of Criminal Procedure prohibits the use of oral statements made as a result of
custodial interrogation unless, inter alia an electronic recording is
made of the statement, Miranda warnings are given,
and the accused knowingly, intelligently, and voluntarily waives
any rights set out in the warnings.  See Tex. Code Crim. Proc. Ann. art.
38.22 ' 3(a)(1)B(2) (Vernon
2005).  Article 38.22 codifies both Miranda=s system of
protecting a suspect against self-incrimination and its distinction between
voluntary statements and compelled confessions.  See Stahle v. State,
970 S.W.2d 682, 690 (Tex. App.CDallas 1998, pet. ref=d).  Pursuant to
article 38.22, section 5,nothing precludes admission of a statement that is
either (1) res gestae of the arrest or offense, (2) a statement that does
not stem from custodial interrogation, or (3) a voluntary statement,
whether or not the result of custodial interrogation. Tex. Code Crim. Proc.
Ann. art. 38.22 ' 5 (emphasis added).  If either the Acustodial@ or Ainterrogation@ predicates are
not met, article 38.22 does not apply.  Gomes v. State, 9 S.W.3d 373,
379 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d); Villarreal
v. State, 61 S.W.3d 673, 680 (Tex. App.CCorpus Christi
2001, pet. ref=d).

2.       Analysis

Having previously decided
appellant was not in custody when he made his videotaped statements, appellant=s
argument regarding his failure to waive his Miranda rights is without
merit.  Article 38.22 of the Texas Code of Criminal Procedure and appellant=s
rights under Miranda do not apply in this situation.  See Gomes,
9 S.W.3d at 379; Villarreal, 61 S.W.3d at 680; see also Bass v. State,
723 S.W.2d 687, 690B91 (Tex. Crim. App.
1986) (concluding the legislature intended the term Acustodial
interrogation@ in Article 38.22 to be construed consistently with its
meaning under the Fifth Amendment to the United States Constitution).








          Assuming, for the purposes of this
issue only, appellant was in custody, his argument is still without merit.  The
record establishes before appellant made his incriminating statements, Wienel
read appellant his Miranda rights, and appellant indicated he understood
his rights.  Appellant then proceeded to answer Wienel=s
questions.  It is undisputed appellant failed to expressly waive his rights;
however, we hold appellant implicitly waived his rights.  

In Barefield v. State,
the Court of Criminal Appeals held Texas=s oral confession
statute does not require an express verbal statement from the accused that he
waives his rights prior to giving the statement.  Barefield v. State,
784 S.W.2d 38, 40B41 (Tex. Crim. App. 1989), overruled on other grounds by
Zimmerman v. State, 860 S.W.2d 89 (Tex. Crim. App. 1993).  The Court
determined A[i]n reaching the voluntariness of a confession, [we should
look] at the totality of the circumstances.@  Id.
at 41.  In the present case, Wienel properly advised appellant of his rights on
videotape and asked appellant if he understood his rights.  Appellant indicated
he did understand and then proceeded to answer Wienel=s
questions.  Thus, based on the totality of the circumstances, we hold appellant
validly waived his rights under article 38.22.  See Hargrove v. State,
162 S.W.3d 313, 318B319 (Tex. App.CFort
Worth 2005, pet. ref=d) (finding appellant
validly waived his rights despite the lack of an explicit waiver ); State v.
Oliver, 29 S.W.3d 190, 193 (Tex. App.CSan
Antonio 2000, pet. ref=d) (finding despite the
lack of an explicit waiver, appellant knowingly, intelligently, and voluntarily
made a statement after reading his rights, indicating  he understood them, and
proceeding without hesitation to discuss circumstances surrounding the murder
with which he was charged).  








Under a constitutional
analysis the answer remains the same.  The lack of an express
waiver by appellant of his Miranda
rights does not, in and of itself, render the oral confession
inadmissible.  Faulkner v. State, 727 S.W.2d 793, 797 (Tex. App.CHouston
[14th Dist.] 1987, pet. ref=d) (citing Harville v.
State, 591 S.W.2d 864, 866 (Tex. Crim. App. 1979)).  Rather, waiver is to
be judged based on the totality of the circumstances.  Id.  Again, based
on the totality of the circumstances, we hold appellant validly waived his
rights under the United States and Texas constitutions.  We overrule appellant=s
second issue.   

C.      Did the Trial Court Abuse its
Discretion in Admitting the Expert Testimony of Officer Carrizal?

In his third issue, appellant argues the trial court erred
in admitting the expert testimony of Officer Carrizal regarding blood spatter. 
Appellant contends Carrizal was not qualified to give expert testimony
pertaining to blood spatter.[5]        

1.       Standard
of Review

We review a trial court=s decision to admit or exclude expert testimony for an
abuse of discretion.  Ellison v. State, 201 S.W.3d 714, 723 (Tex. Crim.
App. 2006).  A trial court abuses its discretion when its decision lies outside
the zone of reasonable disagreement.  Casey v. State, 215 S.W.3d 870,
879 (Tex. Crim. App. 2007).

2.       
Applicable Law








Rule 702 provides: AIf scientific, technical,
or other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise.@  Tex. R. Evid. 702. 
Pursuant to Rule 702, the trial court, before admitting expert testimony, must
be satisfied that three conditions are met: (1) that the witness qualifies as
an expert by reason of his knowledge, skill, experience, training, or
education; (2) that the subject matter of the testimony is appropriate for
expert testimony; and (3) that admitting the expert testimony will actually
assist the fact finder in deciding the case.  Alvarado v. State, 912
S.W.2d 199, 215B16
(Tex. Crim. App. 1995).  The proponent of the expert testimony bears the burden
of proving the expert=s
qualifications.  Perez v. State, 113 S.W.3d 819, 832 (Tex. App.CAustin 2003, pet. ref=d).  

3.       Analysis

During the guilt/innocence phase of the trial,
the State elicited testimony from Carrizal regarding blood spatter on Tuck=s pants and asked Carrizal, based on the pattern, what type
of blood transfer had occurred.  Appellant objected and conducted a voir dire
examination of Carrizal regarding his qualifications.  The trial court
overruled the objection and Carrizal testified the spatter on Tuck=s pant leg was impact spatter and was consistent with
someone kicking a bloody object with his foot.

The specialized knowledge which qualifies a
witness to give an expert opinion may be derived from specialized education,
practical experience, a study of technical works, or a varying combination of
these things.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). 
Carrizal testified he had been a deputy with the Harris County Sheriff=s Department for eight years and had been a member of the
crime scene unit for three years.  He testified there are three levels of blood
spatter training.  Carrizal testified he had completed and was certified in
level one training in blood spatter analysis.  Carrizal also testified level
one certification required forty hours of classes over the course of one week. 
Carrizal, however, did admit he had never testified as an expert on this
subject before.  Based on this evidence, we conclude Carrizal was qualified to
give expert testimony regarding blood spatter.  See Holmes v. State, 135
S.W.3d 178, 183B84
(Tex. App.CWaco 2004, no pet.) (holding
an officer who had received level one training in blood spatter analysis and
had read books on blood spatter analysis was qualified to testify as an
expert).








Furthermore, even assuming Carrizal was not
qualified to testify as an expert, appellant failed to allege harm in his
brief, and we find no harm.  Texas Rule of Appellate Procedure 44.2(b) provides any error,
other than constitutional error, that does not affect substantial rights must
be disregarded.  Tex. R. App. P. 44.2(b).  The erroneous admission of evidence
is not a constitutional error.  See Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).  Substantial rights are not affected Aif
the appellate court, after examining the record as a whole, has fair assurance
that the error did not influence the jury, or had but a slight effect.@
Id.  Thus, we must determine whether the error had a substantial or
injurious effect on the jury=s verdict. Morales v.
State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  In assessing the
likelihood that the jury=s decision was adversely
affected by the error, we consider everything in the record, including any
testimony or physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, the character
of the alleged error, and how it might be considered in connection with other
evidence in the case.  Id.  We may also consider the jury instruction
given by the trial judge, the State=s theory and any
defensive theories, closing arguments, and even voir dire, if material to
appellant=s claim. Id.  

Considering the record as a whole, it may be
said with fair assurance Carrizal=s
testimony did not influence the jury or had but slight effect on the jury=s punishment verdict.  Tex. R. App. P. 44.2(b).  Carrizal
testified about the blood spatter pattern on Tuck=s pant
leg, and stated, in his opinion, it was consistent with someone kicking a
bloody object with his foot.  This testimony merely indicated that Tuck, not
appellant, kicked the complainant.  Thus, assuming it was error to admit
Carrizal=s testimony, the error was harmless.  See id.  We
overrule appellant=s
third issue.   

D.        Did the Trial
Court Err in Admitting into Evidence State=s Exhibits 80 through 84?  








In his fourth issue, appellant challenges the trial court=s
admission of evidence, arguing the evidence was not properly identified or
properly linked to appellant.  Appellant contends State=s
exhibits 80 through 84, which consisted of a rape kit, the victim=s
outer clothing, changing paper from the hospital, and an EMS transfer sheet,
had no relevant connection to the case or appellant and therefore was
erroneously admitted.  The State moved to offer exhibits 80 through 84 into
evidence during the testimony of Deputy Hooper.  Appellant requested, and was
allowed, to question the witness on voir dire to assess whether a proper foundation
had been laid to determine the identification of the State=s
exhibits.  After questioning, appellant objected to the exhibits based on an
improper foundation.  The trial court overruled the objection and admitted the
evidence.  However, even assuming, without deciding, the trial court abused its
discretion in admitting State=s exhibits 80 through 84,
we hold the error, if any, is harmless.  

1.         Applicable Law

The applicable rules regarding a harm analysis in this issue are
the same as previously discussed in issue number three.  See Tex. R.
App. P. 44.2(b).           

2.         Analysis 

While alleging error, appellant failed to
allege any harm, and after reviewing the entire record, we find no harm in the
admission of the exhibits.  The evidence appellant argues was improperly
admitted did not implicate the appellant in the commission of the crime; the
items were merely identified as items belonging to the victim or items the
victim had come in contact with at the hospital. Given the record before us, we
conclude the error, if any, in the admission of State=s exhibits 80 through 84 did not influence
the jury, or had only a slight effect.  We overrule appellant=s fourth point of error.  

 

 

 

 

 








Conclusion

Having
overruled all four of appellant=s
issues, we affirm the trial court=s
judgment.

 

 

 

 

 

/s/      John S.
Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed March 20, 2008.

Panel
consists of Chief Justice Hedges and Justices Anderson and Boyce.

PublishC Tex. R. App. P.
47.2(b).









[1]  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602, 16 L. Ed. 2d 694 (1966).





[2]  It is unclear from the record at what point Tuck
returned to the scene.





[3]  Although appellant raises his issue under the United
States Constitution, the Texas Constitution, and the Texas Code of Criminal
Procedure, he makes no distinction between his rights under each claim. 
Appellant has failed to provide any argument or authority that the Texas
Constitution or the Texas Code of Criminal Procedure provides him greater
protection than the United States Constitution.  In fact, appellant admits in
his brief A[a] plain reading and comparison of the language of
the Fourth Amendment and Art. I, ' 9
reveal no substantive differences.@ 
Therefore, we will analyze appellant=s
first issue using federal constitutional principles.  See Johnson v. State,
853 S.W.2d 527, 533 (Tex. Crim. App. 1992) (declining to address appellant=s arguments regarding his state constitutional rights
when appellant did not make a distinction between the United States
Constitution and the Texas Constitution). 





[4]  Once again, because appellant failed to provide any
argument or authority that the Texas Constitution provides him greater
protection than the United States Constitution, we will analyze appellant=s second issue using federal constitutional
principles.  See Johnson, 853 S.W.2d at 533.





[5]  Appellant also argues the State failed to meet its
burden in proving the expert testimony regarding blood spatter was reliable;
however, appellant did not object at trial to Carrizal=s testimony on the ground that it was unreliable. 
Appellant only objected to Carrizal=s
testimony on the ground he was not qualified.  Appellant=s objection was insufficient to apprise the trial
court or the State that he was challenging the reliability of the evidence as
well; therefore, appellant has waived any argument regarding reliability.  See
Tex. R. App. P.
33.1(a) ; Vela v. State, 209
S.W.3d 128, 131 (Tex. Crim. App. 2006) (stating the qualifications of a witness
as an expert are distinct from reliability and relevance and, therefore, should
be evaluated independently); Nations v. State, 944 S.W.2d 795, 799 (Tex.
App.CAustin 1997, pet. ref=d) (holding the State waived any complaint on appeal about the
reliability of an expert=s opinion because it only objected to relevancy during
the trial).