**REVERSE and REMAND; and Opinion Filed April 19, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-17-00478-CR
_____

**THE STATE OF TEXAS, Appellant**
**V.**
**CARLOS JOVANNY MONTIEL-CONTRERAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause No. 003-80927-2017**

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Brown

The State of Texas appeals the trial court's order granting appellee Carlos Jovanny Montiel-Contreras's motion to suppress. Appellee was charged with driving while intoxicated after a police officer stopped his car at an apartment complex where the officer heard a gunshot. The trial court determined the detention was unlawful because the officer lacked reasonable suspicion to believe appellee had been engaged in criminal activity. We agree with the State that the trial court erred in determining the officer lacked reasonable suspicion. We reverse and remand.

At the hearing on the motion to suppress, the State presented the following evidence: testimony from Plano Police Sergeant Chad Blumrick, an experienced 15-year veteran of the Plano Police Department, an overhead photograph of the apartment complex, police call notes containing information Blumrick had access to before the stop, and an in-car video from Blumrick's patrol

vehicle. Sergeant Blumrick testified that on the morning of December 30, 2016, he was patrolling in the area of 14th Street east of Shiloh Road because there had been two reports of gunshots in that area. The first call came in at 11:04 p.m., and the second call came in at 2:42 a.m. The first caller reported seeing someone with a gun at the Waterford on the Meadow apartment complex. The call notes indicate the complainant advised she heard three gunshots and saw a black male walking north between buildings 4 and 5 with a handgun. Officers were dispatched to the location, but were unable to find a suspect. The second call came in from 14th Street and Shiloh Road, which was the general area of the apartment complex, and the caller reported hearing four to five gunshots. The call notes indicate the caller reported hearing multiple shots in the last fifteen minutes. Another officer, Robert Dorman, wrote in the call notes at 2:58 a.m. that he heard "the noises" three times while on patrol in the area that night. Each time there were "five bangs in quick succession." Officers were dispatched again but could not locate "any evidence or anybody with any weapons."

Sergeant Blumrick waited in a parking lot across the street from the apartment complex to see if there were "any gunshots or anybody leaving that area." He left the parking lot, and at 3:15 a.m., as he was driving by Waterford on the Meadow on 14th Street, he heard a loud bang like a gunshot. Blumrick backed up on 14th Street and pulled into the apartment complex. He had planned to search the area on foot, but as soon as he pulled over, he saw headlights from a car traveling on "the drive of the apartments." He saw the car make a right turn toward his location. Blumrick turned on his overhead lights and stopped the car. Appellee was the driver and had a passenger with him. They were the only people Blumrick saw leaving the immediate area where he heard the gunshot. The sergeant testified he believed there was a high probability that vehicle was involved in the gunshot he heard because the vehicle was leaving immediately after he heard the gunshot. He estimated there was less than a minute between his hearing the gunshot and seeing the vehicle pull out of the area. The in-car video shows Sergeant Blumrick's car backing up and

pulling into the apartment complex and confirms that the sergeant stopped the vehicle soon after he sees it.

On cross-examination, Sergeant Blumrick testified that Waterford on the Meadow is a very large apartment complex. He did not know the number of buildings or apartment units, but agreed there were approximately 47 buildings and almost 350 units. Hundreds of residents live at the complex, and hundreds of vehicles park there. All reports of gunshots, however, came from the south side of the complex. Appellee was not driving abnormally, recklessly, or at an excessive speed, and did not commit any traffic violations. Appellee is not a black male, nor was his passenger, and Blumrick could see appellee before he stopped the car.

The trial court granted appellee's motion to suppress and made findings of fact and conclusions of law. The court's findings are consistent with Blumrick's testimony and supported by the record. For example, the court found that as Blumrick was exiting his vehicle at the complex, he saw headlights coming from the same area from which the sound of the gunshot came. At that time, Blumrick saw no other moving vehicles or individuals leaving the area. The court concluded that Blumrick did not have reasonable suspicion to believe appellee had been engaged in criminal activity and, therefore, his detention of appellee was unlawful.

Generally, a trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard. *Dyar v. State*, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). When, as here, we are presented with a question of law based on undisputed facts, however, we perform a de novo review. *Id.*

A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). To stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* The officer must have some minimal level of objective justification for making the

stop.  *Id.*  In other words, he must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.  *Id.*  The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.  *Id.*

The State compares this case to three others in which courts determined officers had reasonable suspicion to stop vehicles observed in areas where the officers heard gunshots.  *See Faulkner v. State*, 727 S.W.2d 793, 796 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (officer heard gunshots coming from school at 3 a.m. and moments later saw defendant's truck make an unusually quick U-turn near where he heard shots; no one else was in area); *Medina v. State*, No. 04-12-00071-CR, 2013 WL 2645012, at *2 (Tex. App.—San Antonio June 12, 2013, no pet.) (mem. op., not designated for publication) (three seconds after officer heard gunshot, he observed car, which came from direction of gunshot, "screeching up to the stop sign," and there were no other vehicles on road); *Carraway v. State*, No. B14-92-00758-CR, 1993 WL 263400, at *2 (Tex. App.—Houston [14th Dist.] July 15, 1993, no pet.) (not designated for publication) (officer heard gunfire erupt from apartment complex and immediately saw defendant's car exit complex recklessly and at high rate of speed).  Appellee argues these cases are distinguishable because the drivers were each operating the vehicle in a suspicious manner.  Here, it is undisputed there was nothing suspicious about the way appellee was driving.

Yet looking at the totality of the circumstances that night, Sergeant Blumrick articulated other facts that make his decision to stop appellee more than a mere hunch.  The gunshot Blumrick heard was not an isolated incident.  There had been multiple reports of repeated gunshots at or near the apartment complex over a four-hour period.  Blumrick was patrolling that area due to the reports and had been parked in a nearby lot keeping an eye on the complex to see if there were "any gunshots or anybody leaving that area."  Right after Blumrick heard the gunshot, appellee was leaving the immediate area of the complex where Blumrick heard the shot, and appellee and

his passenger were the only people leaving the area. We note the stop occurred at a time of day when typically not many people would be out. *See Crain v. State*, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010) (while time of day is not suspicious by itself, it is factor to be considered in making determination of reasonable suspicion). The fact that appellee did not match the description of the suspect described in the first call that came in at 11 p.m. did not mean that Sergeant Blumrick was not entitled to detain appellee to investigate the gunshot he personally heard at 3:15 a.m. Appellee relies on a prior opinion in which this Court determined there was no reasonable suspicion. That case is distinguishable, however, because although the defendant drove a car that left an apartment complex after a gunshot, the gunshot came from an unknown direction and the officer did not recognize the defendant as a man who disappeared from sight after the shot was heard. *See Deckard v. State*, No. 05-92-00586-CR, 1993 WL 124830, at *2–3 (Tex. App.—Dallas Apr. 12, 1993, no pet.) (not designated for publication)[1]. We conclude the trial court erred in its conclusion that Sergeant Blumrick lacked reasonable suspicion, based on the totality of the circumstances, to stop appellee. We sustain the State's issue.

We reverse the trial court's order and remand for further proceedings.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).

170478F.U05

---

[1] Both sides rely upon unpublished criminal cases. While these cases have no precedential value, we consider them for purposes of comparison, rather than viewing them as binding authority. TEX. R. APP. P. 47.7(a); *see Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013).



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-17-00478-CR     V.

CARLOS JOVANNY MONTIEL-
CONTRERAS, Appellee

On Appeal from the County Court at Law
No. 3, Collin County, Texas
Trial Court Cause No. 003-80927-2017.
Opinion delivered by Justice Brown,
Justices Lang and Whitehill participating.

Based on the Court's opinion of this date, the trial court's April 17, 2017 order is **REVERSED** and the cause **REMANDED f**or further proceedings consistent with this opinion.

Judgment entered this 19th day of April, 2018.